UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
SAMUEL GIBSON,

                Plaintiff,

      - against -                         **MEMORANDUM & ORDER**
                                                  21-CV-41 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Presently before the Court in this action, where Plaintiff Samuel Gibson seeks judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g), are the parties' cross-motions for judgment on the pleadings. (Dkts. 10, 15.) For the foregoing reasons, the Court grants Plaintiff's motion, denies the Commissioner's motion, and remands this case.

## BACKGROUND[1]

Plaintiff is a 52-year-old resident of Brooklyn, who had worked as an electrician from 1994 until 2012, when an accident at work—tripping over debris—left him unemployed. (Tr. 55, 230, 239, 265.) In the eleven months following that accident, Plaintiff developed knee pain that various treatments—including "knee arthroscopy," physical therapy, and "three injections" of a palliative—did not resolve. (Tr. 265.) In January 2013, Plaintiff was seen by Dr. Robert Goldstein, M.D., to resolve his knee pain. (*Id.*) Three months later, Plaintiff reported growing pain in his thumbs. (Tr. 274, 277.) Based on these complaints and an MRI scan, Dr. Goldstein diagnosed Plaintiff with "internal derangement of the left knee," "chondromalacia patella," which is damage

---

[1] Because this matter is being remanded for legal errors that are not dependent on the evidence in the record, the Court provides a limited recitation of the record.

1

to the knee cartilage, and "bilateral trigger thumbs." (Tr. 274, 277.) In September and October 2013, despite having been prescribed more palliatives and undergoing surgical intervention, Plaintiff still reported experiencing pain when standing, sitting, and walking, with Dr. Goldstein noting that Plaintiff was "not improving despite therapy." (Tr. 257, 261, 267–68, 282, 284.) Plaintiff continued seeing Dr. Goldstein regularly at two-month intervals until 2018, and treatment notes reflect that Plaintiff's chief complaint remained knee pain and that Dr. Goldstein repeatedly observed that Plaintiff was still symptomatic and "getting worse." (*See, e.g.*, Tr. 322, 326, 328.) Similarly, Dr. Goldstein noted, multiple times, that in his view, Plaintiff was "100%," "permantely" disabled. (*See, e.g.*, Tr. 330, 332, 336.) Between June 2016 and 2017, Plaintiff's diagnoses included "chronic pain of both knees," "traumatic arthritis of [the] knee," and "primary localized osteoarthrosis." (Tr. 328.) The record also contains the opinions of three consultative examiners. First, in April 2018, Dr. G. Feldman, M.D., reviewed Plaintiff's records and initially denied his claim for disability. (Tr. 64.) Second, in the same month, Dr. Chaim Shtock, D.O., examined Plaintiff. (Tr. 343.) Third, in June 2019, Dr. David S. Pereira—a physician who had performed an operation on Plaintiff's knee in 2013 and saw him only rarely since—examined Plaintiff. (Tr. 447–48.)

On February 28, 2018, Plaintiff applied for DIB, alleging disability since February 1, 2012. (Tr. 27.) The SSA initially denied the claim on May 14, 2018. (Tr. 27.) On May 21, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) ALJ Melissa Hammock held a hearing on July 8, 2019. (Tr. 35.) During the hearing, Plaintiff orally moved to amend his onset date to June 17, 2016,[2] and the ALJ granted the motion. (Tr. 52.) The ALJ issued

---

[2] Plaintiff had previously applied for disability benefits in 2012 for the period from February 1, 2012 to June 16, 2016 (Tr. 70–87), but when the application was denied, Plaintiff did not seek further Appeals Council review.

2

a decision denying Plaintiff's claims on August 26, 2019. (Tr. 35.) Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 2, 2020, making the ALJ's decision final. (Tr. 1.) On November 30, 2020, the Appeals Council extended Plaintiff's time to file for judicial review, in effect, until January 4, 2021. (*Id.*) Plaintiff timely commenced this action on January 4, 2021. (*See* Dkt. 1); *see also* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which [he] was a party. . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [his] of notice of such decision or within such further time as the Commissioner of Social Security may allow.").

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). However, in reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted). Courts in this Circuit have recognized various grounds for which the district court may remand a social security determination to the agency for further consideration. Among them, the ALJ has an affirmative duty to "develop the record in light of the essentially non-adversarial nature of a benefit proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009); *see also* 42 U.S.C. § 423(d)(5)(B) (noting that the Commissioner must "develop a complete medical history of at least the preceding twelve months for any case"); *Decker v. Harris*, 647 F.2d 291, 299 (2d Cir. 1981) (noting that although an applicant bears the burden to place his disability at issue, the ALJ has the "affirmative duty to

3

inquire into all the matters at issue[.]"). Second, the ALJ must correctly apply the relevant legal standard in reaching her decisions. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) ("Failure to apply the correct legal standards is grounds for reversal." (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984))). Third, the ALJ must fully explain her reasoning to allow the Court to engage in meaningful judicial review. *See Klemens v. Berryhill*, 703 F. App'x at 35, 36 (2d Cir. 2017) ("Among the ALJ's legal obligations is the duty to adequately explain his reasoning"); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where [the court is] unable to fathom the ALJ's rationale in relation to the evidence in the record[.]").

Here, remand is required because the ALJ applied the wrong legal standard in step two of her analysis and failed to explain her reasoning with respect to the disability onset date throughout her decision. The Court addresses these in turn.

**I.     The ALJ's Failure to Apply the Correct Legal Standard**

Remand is required because the ALJ applied the wrong legal standard in step two of her analysis. At step two of the analysis, the ALJ must consider an impairment's severity. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An 'impairment' is defined as an "anatomical, physiological, or psychological abnormalit[y] . . . demonstrable by medically acceptable clinical and laboratory techniques." *See* 42 U.S.C. § 423(d)(3). An impairment is 'severe' where it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. Thus, the Second Circuit explained that "severity" merely determined whether a limitation is more than "*de minimis*," effectively functioning as a safety valve "intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Separate and apart from severity, a claimant must establish that her severe impairment "has lasted or can be expected to last for a continuous period of not less

4

than 12 months." 42 U.S.C. § 423.  In short, "[a]lthough whether an impairment is severe *and* whether an impairment meets the duration requirement are both addressed at step two in the evaluation process, these are separate questions that require separate analyses." *Gray v. Astrue*, No. 04 Civ. 3736 (KMW) (JCF), 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (Wood, J.) (emphasis in the original) (remanding, in part, because the ALJ conflated duration with severity).[3]

Here, The ALJ found that Plaintiff's "bilateral trigger thumbs" were "non-severe" because "there [was] no evidence this condition caused significant limitations for at least 12 months[.]" (Tr. 30.)  By so reasoning, the ALJ conflated the requirement of severity with the requirement of duration, *i.e.*, she interpreted the regulation to require that the limitation had to be severe for at least 12 months.  The ALJ thus erroneously found that Plaintiff's impairment was not severe *because* of its duration, rather than considering whether it was more than *de minimis* in terms of severity and then separately evaluating its actual or expected duration.  *See Melia v. Colvin*, No. 14-CV-226 (MAD), 2015 WL 4041742, at *7 (N.D.N.Y. July 1, 2015) ("Courts within this circuit have discerned errors when statutory disability-duration analysis is conflated with regulatory impairment-severity analysis." (collecting cases)).  The ALJ's erroneous application of the relevant standard at step two warrants remand.

## II.    The ALJ's Failure to Reason her Decision

Remand is likewise required because, despite having granted Plaintiff's oral motion to amend his onset date from February 1, 2012 to June 17, 2016 (Tr. 52), the ALJ's opinion,

---

[3] To illustrate, if a car accident renders a claimant permanently incapacitated, her impairment does not become minor if the record suggests that the accident occurred only weeks ago.  *See Gray*, 2009 WL 1598798, at *5 ("[T]o state that an impairment is not severe because it does not meet the twelve-month requirement . . . is inconsistent with the Commissioner's own interpretation of the regulations." (citations omitted)).  The hypothetical claimant has a severe impairment and then must also prove that her impairment "has lasted or *can be expected to last* for a continuous period of not less than 12 months." 42 U.S.C. § 423 (emphasis added).

5

inexplicably, refers to both dates as the onset date. (*See* Tr. 30 ("The claimant did not engage in substantial gainful activity during the period from his alleged onset date of February 1, 2012"); Tr. 27 ("[T]he claimant [is alleging disability] beginning February 1, 2012."); Tr. 34 ("The claimant was not [disabled] from February 1, 2012[.]"); *but see* Tr. 31 ("For instance, in July 2016, shortly after alleging disability [on] June 17, 2016[.]").) While the inadvertent citation to an incorrect onset date, in and of itself, might be harmless error, the ALJ's discussion of the two markedly different onset dates makes it impossible for the Court to determine which onset date she based her decision on and whether she considered only some, or all, portions of the record. For example, although the ALJ discussed only the amended date of June 17, 2016 in step four of her analysis (*see* Tr. 31–32), she considered evidence from both periods elsewhere. (*See, e.g.*, Tr. 30 (discussing medical notes from 2013).) Remand is therefore required. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where [the court is] unable to fathom the ALJ's rationale in relation to the evidence in the record[.]").[4]

---

[4] The ALJ also erred in other respects. First, having erroneously designated Plaintiff's "bilateral trigger thumbs" impairment as non-severe, the ALJ failed to consider it in step four of her analysis. (*See* Tr. 30–33.) Second, the ALJ failed to develop the record before her. The record contained no opinion from any of Plaintiff's treating sources. Although Plaintiff filed his case after March 27, 2017, and it therefore was not subject to the 'treating physician rule,' there is a growing consensus amongst courts applying the new regulations that an ALJ's obligation to develop the record still requires her to obtain the opinion of a claimant's treating-physician. *See e.g., Ayala v. Kijakazi*, No. 20-CV-9373 (RWL), 2022 WL 3211463, at *21 (S.D.N.Y. Aug. 9, 2022) ("Under the new regulations, courts often find that an informed decision could not be reached where an ALJ failed to obtain opinion evidence from the plaintiff's long-term treating physicians") (collecting cases). Here, the ALJ did not appear to have contacted, or attempted to contact, Plaintiff's treating physician Dr. Goldstein, to receive an opinion about Plaintiff's multiple joint issues. Nor does it appear that the ALJ considered Dr. Goldstein's opinion, noted in the records multiple times, that Plaintiff was "100%," "permanently" disabled. (*See, e.g.*, Tr. 330, 332, 336.) Although the failure to obtain an opinion is harmless when the record otherwise "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), the record here contains no such evidence. The ALJ exclusively relied on her observations of Plaintiff's testimony

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The Commissioner's decision is vacated and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to close this case and enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
       Brooklyn, New York

---

and the opinions of consultants who examined Plaintiff on a single, or sporadic, basis. (Tr. 30–33.) Such evidence was insufficient to allow the ALJ to continue without Dr. Goldstein's opinion. Third, in step four of her analysis, the ALJ found Dr. Goldstein's observations conclusory and effectively dismissed them. The ALJ erred by failing to take "further action . . . such as recontacting [the doctor] for additional information," *Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at *6 (E.D.N.Y. Feb. 24, 2022), as well as substituting her lay opinion for that of a medical expert and treating physician, *see Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282 (E.D.N.Y. Jan. 2, 2018) (finding that the ALJ is "not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps[.]" (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010))).