UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SAMUEL GIBSON,

                       Plaintiff,

          - against -

ANDREW M. SAUL, Commissioner of the
Social Security Administration,

                    Defendant.
-------------------------------------------------------x

                                 <u>**MEMORANDUM & ORDER**</u>
                                    21-CV-41 (PKC)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Samuel Gibson ("Gibson" or "Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) to challenge the denial of benefits by the Social Security Administration ("SSA"). After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $115,736 in past-due benefits. Plaintiff's counsel, Christopher James Bowes ("Bowes"), now moves for $28,934 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Bowes's motion is granted in part and denied in part, and Bowes is awarded $24,640.

## BACKGROUND

       After Plaintiff was denied benefits at the agency level, Plaintiff retained Bowes and filed this action on January 4, 2021. (Dkts. 1, 25.) After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA. (Dkt. 16.) This Court then awarded Plaintiff $6,756.98 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1] (Dkt. 22.) On July 11, 2024, the SSA mailed Plaintiff a Notice

---

[1] Bowes never received the $6,756.98 award of attorney's fees ordered by this Court because the United States Treasury intercepted the fees to pay Gibson's New York State tax debt. (*See* Dkt. 26 ¶ 50.) Bowes cannot return money he never received, so the Court need not consider

of Award letter informing him that he would receive approximately $115,736 in past-due benefits, with 25% ($28,934) withheld as possible fees for his attorney.  (Dkt. 26 at ECF[2] 20–22.[3])  On August 19, 2024, Bowes first received a copy of the Notice of Award letter and the same day moved for attorney's fees pursuant to Section 406(b).  (Dkts. 23, 26.)[4]  Bowes now seeks $28,934 for work performed before this Court.  (Dkt. 26 ¶ 22.)

Along with Bowes's motion, counsel submitted a fee agreement, demonstrating that Gibson retained Bowes on a 25% contingency-fee basis, and itemized time records, indicating that he spent a total of 30.8 hours litigating this matter before the Court.  (Dkt. 26 at ECF 14, 16.) $28,934 for 30.8 hours of work would be an effective hourly rate of $939.42 per hour.

## DISCUSSION

### I.    Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice

---

the issue of a duplicative EAJA fee award.  *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) (explaining that an EAJA award offsets a § 406(b) award); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to [their] clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *4 (N.D.N.Y. July 10, 2009)).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, withheld $28,934. (Dkt. 26 at ECF 21.)

[4] The August 19, 2024 affidavit was filed with several pages missing.  The complete copy was filed on August 20, 2024, and may be found at Dkt. 26.

of the benefits award" and the law presumes that "a party receives communications three days after mailing." *Id.* at 88–89 & n.5. Furthermore, under Rule 54(d), "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

In response to Bowes's motion for attorney's fees, the Commissioner mentions that Bowes filed the motion 39 days after the date on the Notice of Award letter.  (Dkt. 27 at ECF 1.)  Although the Commissioner does not directly argue that Bowes's motion is untimely, to the extent that he implies so, the Court reiterates that the 14-day clock does not begin to run on the date of the letter, but when counsel receives notice of the award.  *See, e.g.*, *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at *1 (E.D.N.Y. Jan. 11, 2022) ("[S]tarting the clock when plaintiffs receive notice would seem inequitable, depriving counsel of fees to which they are entitled through no fault of their own, and creating a perverse incentive for plaintiffs to conceal that they had received notice of benefits in order to avoid paying their attorneys and thereby keep the entirety of their awards for themselves."); *Bluet v. Comm'r of Soc. Sec.*, No. 19-CV-6323 (PKC), 2022 WL 160267, at *2 (E.D.N.Y. Jan. 18, 2022).  As Bowes filed his motion on the day he received the Notice of Award letter, it was timely filed.

## II.    Reasonableness of the Requested Fee

### A.    Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled."  42 U.S.C. § 406(b)(1)(A).  If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness. *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits;[5] and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do"; (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level"; (3) "the satisfaction of the disabled claimant"; and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–55. Ultimately, a district court may reduce the amount called for in the contingency-fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

---

[5] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.2 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (cleaned up)).

B.      **Application**

Here, Plaintiff retained Bowes pursuant to a 25% contingency-fee agreement.  (Dkt. 26 at ECF 14.)  There are no allegations of fraud or overreaching with respect to the retainer agreement. Bowes seeks the full 25% of Plaintiff's past-due benefits.  At 30.8 hours of work, that would be an effective hourly rate of $939.42 per hour.  For the reasons explained below, the Court finds that amount to be unreasonable in the context of this case.

To determine reasonableness, the Court considers "the character of the representation and the results the representative achieved."  *Fields*, 24 F.4th at 849.  "[L]ike the attorneys in *Fields*, Bowes is an experienced lawyer who specializes in Social Security disability cases."  *Munoz v. Comm'r of Soc. Sec.*, No. 20-CV-2496 (KAM), 2023 WL 5310742, at *2 (E.D.N.Y. Aug. 17, 2023).  Here, he submitted a detailed 20-page brief summarizing several perceived issues, such as the Administrative Law Judge's ("ALJ") failure to consider or address items, (Dkt. 11 at ECF 16– 19), but the Court did not ultimately rely on any of his arguments in its decision to remand the case.  (*See* Dkt. 16.)  Instead, the Court determined that the ALJ erred because she misapplied the legal standard for assessing the severity of one of Plaintiff's impairments and used two separate onset dates, which made it impossible to determine which portion of the record she had relied on. (*Id.* at 4–6.)  While the decision was ultimately in Plaintiff's favor, it was not due to Bowes's identification of the most important issues.  Therefore, this factor weighs in favor of a downward adjustment.

Second, the Court must determine whether counsel was responsible for unreasonable delay, *Fields*, 24 F.4th at 849, and finds that Bowes was.  On January 6, 2021, the Court set a briefing schedule that directed Defendant to file the administrative record by April 6, 2021, followed by Plaintiff's motion for judgment on the pleadings by June 7, 2021, with Defendant's response due

by August 6, 2021, and Plaintiff's reply due by August 27, 2021. (Dkt. 4.) On April 6, 2021, Defendant sought an extension of time, until June 7, 2021, to file the administrative record. (Dkt. 6.) That request was granted the same day, and the Court adjusted the briefing schedule to require Plaintiff to file his motion for judgment on the pleadings by August 6, 2021. (4/6/2021 Dkt. Order.) Defendant timely filed the administrative record on June 3, 2021. (Dkt. 7.) But Bowes missed the August 6, 2021 deadline to file Plaintiff's motion for judgment on the pleadings, requesting an additional month to file that motion four days *after* it was due. (Dkt. 9.) While Bowes is not responsible for Defendant's untimeliness, missing deadlines without prior explanation "was exactly what the Second Circuit warned about in *Fields*: Plaintiff's counsel being eligible for an additional proportion of past-due benefits because of their own delay." *Foster v. Comm'r of Soc. Sec.*, No. 19-CV-1743 (PKC), 2023 WL 7924172, at *3 (E.D.N.Y. Nov. 16, 2023) (quoting *Fields*, 24 F.4th at 849 n.2 ("Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery.")). Therefore, to prevent Bowes from recovering the benefit of his own delay, the Court finds a slight downward adjustment warranted.

The third consideration with respect to reasonableness is whether the requested amount constitutes a "windfall." *Fields*, 24 F.4th at 849. The Court analyzes four factors in determining whether a requested amount qualifies as a windfall. *Id.* at 854–56.

First, with respect to "the ability and expertise of the lawyers and whether they were particularly efficient," *id.* at 854, the Court believes that 30.8 hours was slightly beyond reasonable in the context of this case. In *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to

do the same work, justifying a *de facto* hourly rate of $1,556.98. *Id.* at 854. Here, the transcript was 456 pages, (Dkt. 7), and the opening brief was 20 pages, (Dkt. 11). Although Plaintiff's brief was slightly longer than the brief in *Fields*, the transcript was roughly half the length. *Compare* (Dkt. 7), *with Fields*, 24 F.4th at 854. Additionally, Bowes did not spend any time negotiating a stipulated remand as did the attorney in *Fields*, 24 F.4th at 854, nor did he draft a reply brief. Therefore, a slight downward departure is warranted due to the length of the administrative transcript, the length of the brief, the lack of a reply brief, and Bowes's substantial experience in this area of the law.

Second, with respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," *id.* at 855, the Court notes that Bowes did not represent Plaintiff in front of the SSA before filing this suit. In *Fields*, plaintiff's counsel had represented the plaintiff from the start of his agency proceedings, including four separate hearings before ALJs and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall. *Id.* Here, Bowes "was not retained until after the conclusion of the administrative process," *Daniels v. Comm'r of Soc. Sec.*, No. 20-CV-430 (PKC), 2022 WL 2918236, at *3 (E.D.N.Y. July 25, 2022), and therefore, it is reasonable that it may have taken Bowes longer than the attorney in *Fields* to review the underlying record. The Court does not find that this factor warrants a downward adjustment.

Third, with respect to the "satisfaction of the disabled claimant," *Fields*, 24 F.4th at 855, the Court notes that Bowes achieved the desired result, assisting Gibson in recovering past payments to which he was entitled and future payments. There is no evidence in the record that

Gibson was dissatisfied with Bowes's performance. A downward departure is not warranted based on client dissatisfaction.

Lastly, with respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that this case was not as uncertain as in *Fields*, where the SSA denied the claim again even after remand. *Fields*, 24 F.4th at 850. But here, because the SSA initially denied the claim, and remand was not stipulated to, no result was presumed nor guaranteed. *Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2024 WL 989908, at *4 (E.D.N.Y. Mar. 7, 2024); *Foster*, 2023 WL 7924172, at *4. Therefore, the Court does not find that this factor justifies a downward departure.

For the reasons explained above, the Court finds the requested amount to be unreasonable in the context of this case, and reduces the amount to $24,640, which results in a *de facto* hourly rate of $800. As previously stated, Bowes never received an EAJA payment, and so there is no need to order remittance.

## CONCLUSION

For the reasons explained above, the pending motion for attorney's fees under 42 U.S.C. § 406(b) is granted in part and denied in part, and Bowes is awarded $24,640. The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 15, 2024
Brooklyn, New York

8